889 F.2d 1100
 13 U.S.P.Q.2d 1407
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Lynn R. NEISS, Plaintiff-Appellee,
v.
A.L.C. COMPANY, INC., Defendant-Appellant.
 No. 89-1173.
 United States Court of Appeals, Federal Circuit.
 Oct. 19, 1989.
 
 Before RICH, Circuit Judge, BENNETT, Senior Circuit Judge, and BISSELL, Circuit Judge.
 BISSELL, Circuit Judge.
 
 DECISION
 
 1
 A.L.C. Company, Inc. appeals the order of the United States District Court for the Northern District of Ohio, No. C88-3997A (Nov. 8, 1988), as amended on November 30, 1988, granting Lynn R. Neiss' preliminary injunction motion. We vacate and remand.
 
 OPINION
 
 2
 Federal Rule of Civil Procedure 52(a) "requires that the denial or grant of a preliminary injunction be supported by findings of fact." Pretty Punch Shoppettes, Inc. v. Hauk, 844 F.2d 782, 784, 6 USPQ2d 1563, 1565 (Fed.Cir.1988). Although "[t]he rule does not place a severe burden upon the trial judge, for he 'need only make brief, definite, pertinent findings and conclusions upon the contested matters[,]' " Loctite Corp. v. Ultraseal Ltd., 781 F.2d 861, 872, 228 USPQ 90, 97 (Fed.Cir.1985) (citation omitted), "the trial court must provide sufficient factual findings such that we may meaningfully review the merits of its order." Pretty Punch, 844 F.2d at 784, 6 USPQ2d at 1565.
 
 
 3
 The district court apparently found a reasonable likelihood of success in proving infringement under the doctrine of equivalents. Its findings, however, do not indicate that each disputed claim limitation or its substantial equivalent was present in both accused devices. See Julien v. Zeringue, 864 F.2d 1569, 1571, 9 USPQ2d 1552, 1553 (Fed.Cir.1989). Without more, statements that Neiss' "Squeezer II is the patented device" and that "a patent was awarded only after [Neiss] made the combination claim involving using a replaceable sealing member of the valve construction for controlling the flow of pressurized abrasive granular material" are insufficient to meet the Rule 52(a) standard. Such cursory treatment of the doctrine of equivalents fails to provide any foundation on which we could engage in a meaningful review of the merits. Without "guidance as to why and how it arrived at its conclusion [, w]e have no basis for evaluating what facts entered into the trial court's infringement analysis, or if that analysis comports with the [preliminary injunction] standards articulated by this court." Pretty Punch, 844 F.2d at 784, 6 USPQ2d at 1565. Accordingly, the order is vacated and the case remanded to the district court for further proceedings consistent with this opinion.*
 
 COSTS
 
 4
 Each party shall bear its own costs.
 
 
 5
 RICH, Circuit Judge, concurring.
 
 
 6
 I agree with the vacating of the preliminary injunction, which should not have been granted anyway because, I believe, the possibility of prevailing ultimately on the issue of infringement is nil. Infringement depends, first, on claim construction, a question of law which this court reviews de novo. I also agree that the meager findings do not suffice to support the injunction or to comply with Fed.R.Civ.P. 52(a).
 
 
 7
 I find the district judge's explanations of why the injunction was granted so unclear that I cannot tell whether he found literal infringement or a prospect of infringement under the doctrine of equivalents. They are more consistent with the former than the latter. The majority opinion also seems unsure of the judge's reason.
 
 
 8
 To support a preliminary injunction there must be, of course, a clear case of infringement. My view is that it is not possible to so construe the only claim alleged to be infringed in accordance with the precedents in this court as to find infringement, either literally or under the doctrine of equivalents. I say this after consideration of the complete record of the proceedings before the District Court.
 
 
 9
 Contrary to what plaintiff's counsel told the trial court, the claim must be construed in the light of the patent specification, its prosecution history, and the prior art. So construed, it cannot be found that the accused devices contain the "handle means" of claim 1.
 
 
 10
 The two accused devices are designated DM-II and DM-IIS. They are asserted to be copies of plaintiff's "Squeezer II," which plaintiff assumes to be covered by claim 1. However, it is not covered by claim 1 for the reason that it lacks one of the essential elements of claim 1, namely, the "handle means" of that claim's clause (a).
 
 
 11
 The handle of clause (a) consists of the two principal parts Mr. Neiss incorporated in his "Squeezer I" and describes in his patent and recites in its only asserted claim, namely, the "section of rigid pipe," to one end of which the nozzle is attached and to the other end of which the hose is attached, and the "flexible gripping sleeve." The pipe and the sleeve together constitute the handle, or "handle means" as the claim calls it. The way they are combined is specifically stated in the claim which says the sleeve is "telescopically mounted on the section of rigid pipe." (My emphasis.) The nature of the sleeve is further limited in the claim which specifies that it contains "a plurality of finger receiving depressions." To infringe this claim, all of these structural handle features, or their functional equivalents, must be present in an accused device and, at the very least, the accused device must contain a "handle."
 
 
 12
 The reason I say that "Squeezer II" does not infringe--which is another way of saying the patent does not cover it--is that it has no "handle," and certainly it does not have the specific handle specified in claim 1. Mr. Neiss testified in response to questions from his own attorney that he omitted the handle from "Squeezer II" saying, in effect, that he omitted it because it wasn't needed. What he actually said was: "I found out, figured out that a rubber hose serves as a gripping sleeve just as well as a handle grip, so why put the handle grip on." So defendant cannot be held to have copied plaintiff's patented structure. Defendant's device being substantially the same as "Squeezer II," for the reasons just stated, they too are not covered by claim 1 and do not infringe the patent.
 
 
 13
 I speak of both of defendant's structures together, but I note the fact that we really do not know the exact structure of DM-IIS because neither the sketch nor the specimen before this court shows how the air hose is secured to the nozzle in an airtight fashion. No hose barb--if one is used--is shown in either drawing or model. I have seen enough, however, to know that it does not meet the claim limitations.
 
 
 14
 Mr. Neiss and his attorney, in pursuing this suit, have a theory of infringement which will not hold water. It involves an attempt to find the rigid pipe element of the "handle means" in the hose barb which attaches the air hose directly to the nozzle and to find the flexible gripping sleeve in the air hose itself, which is, as usual in nearly all hose connections of all kinds, telescoped over the hose barb. This requires one to read the bare words of the claim in a vacuum with no regard whatsoever for what they were intended to mean in the patent and to read the claim without reference to the specification and the prosecution history and, if I may say so, common sense. If their theory were acceptable, then every hose connected to another member with a common hose barb would have a "handle" meeting the elements of claim 1, clause (a), including common garden hose.
 
 
 15
 Aside from the handle structure discussed above and some detailed improvements of the front end resilient nozzle closure which Neiss discloses, the basic dead man "tip valve" structure for use on sandblast nozzles was known in the art as shown in the patent to Weijsenburg, No. 3,618,263, which issued several years before Neiss invented his valve. It is irrelevant that he did not know about it. He could not have a valid patent covering what was old and was properly limited by the examiner to claims limited to the details of his own devising. When those details are not used, there is no infringement.
 
 
 16
 For the foregoing reasons, I am of the opinion that claim 1, properly construed or interpreted according to law, is not infringed by A.L.C. Company's sandblast nozzle structures DM-II and DM-IIS. This is sufficient reason for denying a preliminary injunction, which is the only issue before us now. It also, as I am well aware, foredooms the plaintiff's case on the merits to failure.
 
 
 
 *
 The sufficiency of factual findings to support the preliminary injunction is the sole issue considered by the majority. Because the factual findings are insufficient, the majority does not reach, and intimates no view on, the infringement issue raised by the concurrence